E-FILED
Tuesday, 08 October, 2024 01:41:50 PM
Clerk, U.S. District Court, ILCD

FILED

OCT 07 2024

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

UNITED STATES DISTRICT COURT FOR
THE CENTRAL DISTRICT OF ILLINOIS

TRACY INMAN
Plaintiff

v.

UNITED STATES OF AMERICA
FEDERAL BUREAU OF PRISONS,
WARDEN OF FPC PEKIN,
P.A. DANIELLE SMITH OF FPC PEKIN,
NURSE CARRIE SCHMIDT OF FPC PEKIN,
Defendants

42 U.S.C. SECTION 1983
COMPLAINT

## I. INTRODUCTION AND RELIEF REQUESTED

Petitioner, Tracy Inman, ("Petitioner"), who is a Federal prisoner at FPC Pekin, proceeding pro se, hereby requests the relief and remedy of immediate release to home confinement to avoid the violation of Petitioner's Constitutional rights as afforded to her under the Eighth Amendment, pursuant to Title 42, United States Code Section 1983. Petitioner requests the sum of $7,000,000 made payable to Petitioner as compensatory damages due to medical negligence and deliberate indifference. Petitioner further requests that the Court impose punitive damages upon the Bureau of Prisons ("BOP") to punish and deter them from future violations against other Adults in Custody ("AIC").

Petitioner is serving a 138 month sentence of which she has already served 23.5 months in a BOP facility. She has earned 33 months of Good Time Credit ("GTC") and with her 40 months of front-loaded First Step Act ("FSA") credits, she has approximately 41.5 months remaining.

## II. FACTS

Petitioner has severe medical issues that are not being addressed by the BOP. She has an arachnoid cyst that is resting between her brain stem and her spinal cord. This causes her an immense amount of pain and causes her to have constant migraine headaches. Some days Petitioner is completely incapacitated from the pain.

Petitioner was transferred to FPC Pekin on May 12, 2023 and her medical records came with her, although Petitioner's requests for a copy of the records has been ignored. Medical staff were made aware of her cyst as well as multiple undefined tumors growing inside her head. The physician at FPC Pekin at the time, Dr. Moats, took Petitioner off of all of her pain medications she had been on and told her, "your pain isn't as serious as you claim." He then prescribed her Propranolol, but that medication does not give her any pain relief. Also important to note, Dr. Moats is no longer working at FPC Pekin. He is now on an ankle monitor at home.

Since arriving at FPC Pekin, Petitioner is now exhibiting three additional external tumors on her head. She has brought this to the attention of medical staff with no response. Many times there is no sick call for a week at a time, and emails to staff go unanswered. Petitioner did have a CT scan performed on her on January 31, 2024. No results were ever given to her - despite multiple requests via email to the medical staff at the camp.

Petitioner is scared for her well being and rightly so. She received an email from A.W. McDowell stating that Petitioner was enrolled in the 'Neurology Chronic Care Clinic' and that she had "been scheduled to see a neurosurgeon on March 20, 2024." This appointment never occurred and Petitioner has never received ANY chronic care from the medical staff at FPC Pekin.

Petitioner also suffers from severe PTSD after witnessing the death, caused by medical negligence and deliberate indifference, of fellow inmate and friend, Nya Mach, in April 2024. Petitioner's detailed account of the horrible incident is attached to this complaint and not only underscores what Petitioner is experiencing and dealing with, but also underlines the medical negligence and deliberate indifference shown to all the AICs at FPC Pekin. Petitioner has never received any trauma care since that incident occurred.

Additionally, Petitioner is struggling with concerns over her husband's own medical conditions. He is confined to a wheelchair and recently fell out of his chair, breaking his left shoulder and left hand. This underscores how much the Petitioner is needed at home, not only to care for herself, but to care for her husband, and she can only do so if released to home confinement. The medical negligence and deliberate indifference to her medical needs is severe and inexcusable. She does not want to die here!

Petitioner respectfully argues that this District Court does "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. Section 1331.

Section 1983 basically seeks to (1) deter state actors from using badge of their authority to deprive individuals of their federally guaranteed rights, and (2) provide related relief. It was designed to protect individuals against misuse of power made possible only because wrongdoer is clothed with authority of state law. Since the state has created a custodial or other special relationship with a particular class of individuals, courts have recognized that the state may have a constitutionally recognized "affirmative duty" to provide certain "elementary protective services." Jackson, 738 F .2d at 1446-47. Prison inmates represent one such class. In Estelle v. Gamble, 429 U.S. 97, 104-06, 50 L Ed. 2d 251, 97 S Ct. 285 (1976), the Supreme Court recognized a constitutional duty on the part of the state not to be deliberately indifferent to the medical needs of its prison inmates. Although this Eighth Amendment duty has been phrased negatively by the Supreme Court, we have stated that the state has an affirmative obligation "to provide persons in its custody with a medical care system that meets minimal standards of adequacy." Wellman v. Faulkner, 715 F .2d 269, 271 (7th Cir. 1983).

The courts have said that deliberate indifference requires a showing of more than mere or gross negligence, but less than purposeful infliction of harm. Perkins v. Lawson, 312 F .3d 872, 875 (7th Cir. 2002); Proffitt v. Ridgway, 279 F .3d 503, 506 (7th Cir. 2002) (explaining that deliberate indifference to prisoner's safety implies avoidance of KNOWN risk, not merely foreseeable risk). "A detainee establishes a Section 1983 claim by demonstrating that the defendants were aware of a substantial risk of serious injury to the detainee but nevertheless failed to take appropriate steps to protect him from a known danger." Payne for Hicks v. Churchich, 161 F .3d 1030, 1041 (7th Cir. 1998). Although this is a "high hurdle for a plaintiff," Peate v. McCann, 294 F .3d 879, 882 (7th Cir. 2002), one "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer, 511 U.S. at 842.

In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, the United States Supreme Court established a cause of action under the United States Constitution against federal officials in their individual capacities for the violation of federal constitutional rights. The United States Supreme Court has specifically allowed Bivens claims to be brought against federal prison officials based on allegation of deliberate indifference to a serious medical need. In order to establish an Eighth Amendment medical claim, the plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that

indicate deliberate indifference to that need," Natale v. Camden Cty. Correctional Facility, 318 F .3d 575, 582 (3rd Cir. 2003). In Monmouth County Correctional Institute Inmates v. Lanzaro, "a serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention," and "if unnecessary and wanton affliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." In Rouse v. Plantier, 182 F .3d 192, 197 (3rd Cir. 1999), the Judge contended "that the BOP's systematic failure to constitutionally adequate level of care reflected a deliberate indifference to the inmate's medical needs."

In Petitioner's circumstances, the two prong evaluation for an Eighth Amendment claim meets both the objective inquiry and the subjective inquiry. The objective inquiry is met in Farmer v. Brennan, 511 U.S. 825, 834, 114 S Ct. 1970, 128 L. Ed. 2d 811 (1994), where it states "alleged deprivation is 'sufficiently serious' that the action or inaction of a prison employee leads to the denial of the minimal civilized measure of life's necessities."

The subjective inquiry is also met in Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 911 (1994), where it states that "a prison official may be held liable for denying to a prisoner humane conditions of confinement, under the rule that an official's 'deliberate indifference' to a substantial risk of serious harm to a prisoner violates the Eighth Amendment, only if the official is subjectively aware that the prisoner faces such a risk and disregards that risk by failing to take reasonable measures to abate the risk" and "prison conditions could constitute cruel and unusual punishment without any officials' improper subjective motivations." In Board v. Farnham, 394 F .3d 469, 478 (7th Cir. 2005), it states that "inhumane and inadequate conditions that existed during confinement infringed on constitutional rights." Furthermore, deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse v. Plantier, 182 F .3d 192, 197 (3rd Cir. 1999).

28 C.F.R. Section 542.10, "provides inmates with the ability to seek formal review of an allegation of inadequate medical care," and 42 U.S.C. Section 1983, states that "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action of law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

Quincy West v. Samuel Atkins, (1988) 487 US 42, 101 L Ed 2d 40, 108 SCT 2250, states "a physician who is employed by the BOP is acting 'under the color of state law.' " Petitioner is alleging a denial of her rights, under the Federal Constitution's Eighth Amendment, to be free from cruel and unusual punishment. "(1) A physician who provides medical service to inmates acts 'under color of state law' within the meaning of 42 U.S.C. Section 1983, when an inmate is treated; and (2) that defendants are not removed from purview of Section 1983 simply because they are professionals acting in accordance with

professional discretion and judgment. A physician who acts on behalf of the state to provide needed medical attention to a person who is involuntarily in custody and cannot otherwise obtain such care, and who causes physical harm to such a person by deliberate indifference, deprives that  person of liberty without due process in violation of the Federal Constitution's Fourteenth Amendment."

IV. EXHAUSTION OF REMEDIES

Exhaustion of remedies is futile in Petitioner's case. She has not been able to file her administrative remedies as required due to futility, based on the following facts: the administrative staff refuse to accept electronic cop-outs, requesting paper cop-outs only, which are then shredded or thrown away. The staff are restricting the inmates from filing official administrative remedies by only allowing them to obtain one BP-8, per inmate, per week - which then must be turned in no earlier than the following week, and only at Open House when it is called by the Camp Counselor, Mr. Newman. The process is then delayed even further due to the staff not allowing the inmates to then receive a blank BP-9 form until the week after that. The reason that the Camp Counselor 'provided' for this restriction was that "the administrative staff at FPC Pekin do not have the time to process our administrative remedies since the Supreme Court ruled on the Loper case. The Supreme Court created too much work for the BOP." Any further effort on trying to file the remedies is fruitless and it would take 120 days or more to go through the four-step procedure to address a single claim. In Woodley v. Warden, USP Leavenworth, 24-3053-JWL, (United States District Court, District of Kansas, May 15, 2024), the judge stated that "Petitioner is correct that [a] narrow exception to the exhaustion requirement applies if a petitioner can demonstrate that exhaustion is futile." In the case of Doe v. Federal Bureau of Prison, 23-cv-5965 (AT)(JLC), (USDC SD NY, 12-28-2023), the petitioner claimed "that the BOP violated federal statutes by failing to allow them to exhaust their administrative remedies, and an exception applied due to futility."

VERIFICATION:

I have read the foregoing petition and hereby verify that the matters are true and correct to the best of my ability.

Executed at Pekin, Illinois on this ___First___ day of ___October___, 2024.

_Tracy Inman #59131-509_
TRACY INMAN, REG #59137-509
FPC Pekin
PO Box 5000
Pekin, IL 61555-5000

TRULINCS 59137509 - INMAN, TRACY - Unit: PEK-F-A

---------------------------------------------------------------------------------------------------------------------------

FROM: 59137509
TO: Riva, Sara
SUBJECT: Nya Mach
DATE: 04/19/2024 01:44:23 PM

My name is Tracy Inman and I am writing this statement on the behalf of Nya Mach. The situation concerning her medical condition which could have been prevented. It all started at 4:45 p.m... on April 18, 2024. I was sitting in y cubicle in the housing unit when I heard my neighbor Nya yelling that she needed an inhaler, so I pulled my inhaler out of my locker and gave it to her. I then stood outside her room to make sure she was ok. It was obvious she was not. It was the that inmate Shell went to the phone and called 333. The officer was informed that Nya was having a severe asthma attack in the exact alley and exact room number. When the first officer arrived he was asked if they had called 911? his response was "I think they called but the Lt is on his way."(G. Cage) We were also told that the steps they were taking was protocol. They didn't call medical on the radio. We told the Lt. Confer she was having an asthma attack and he commented that she needed to be Nar canned. Again we told him she was not on drugs she's having an asthma attack. He then yawned in an exaggerated way and say " Where is her inhaler ?" when there was 3 visible inhalers laying on the bed. By this time Nya was panicking and having an even harder time breathing. Both myself(Inman) and inmate Flowers tried to calm Nya down. We couldn't that is when she began to have a seizure. The officers did nothing they stood and watched as this young girl stopped breathing. We then informed them that she had no pulse and they continued to stand there and do nothing. Lt. Confer yelled at us that "I don't need you fuckers to tell me how to do my job."

All of her symptoms started around4:45 p.m.. It took officers 5-10 minutes to even respond to our call to 333. By the time the first officer arrived she was already in and out of consciousness. When the Lt. asked for her I.D. to call it in she was already non -responsive with no pulse. These officers had total disregard for this young girls life. Not in the 20-25 minutes she was in the unit did any of the officers try to perform CPR. Lt. Confer told us to lower her to the floor so he could start CPR. As we were doing this she urinated on myself and herself. The officer stepped make and never touched her. They then called for the wheelchair. When she was put in the wheelchair that had only one foot pedal inmate B. Martinez was trying to help keep her legs up as they kept pushing the wheelchair. She was told to stop and they continued to drag her legs across the concrete. Once they got her to Medical they started CPR. It was probably another 10-15 minutes before the ambulance showed up. From what I saw during this whole situation these officers are not trained to handle a medical emergency. They should have dispatched for medical help immediately and they didn't. Had Nya Mach received the proper medical care from the beginning this tragedy could have been prevented. Someone needs to be held accountable for this as far as I am concerned the staff a Pekin Federal Prison camp are responsible for that young girls life. Their total disregard for human life makes me lose all faith in humanity.
Sincerely,
Tracy Inman 59137-509

TIME LINE FOR 4/18/2024 FOR MS.MACH

4:15- 333 was called.

4:40- Officer Schmidgal went *to* the Nebraska housing Unit without any medical staff/ He had no assistance.

4:50- Officer Garskit and Lieutenant Confer entered the Nebraska housing.

4:55- Officer Schmiclgal went for a wheel chair, NO MEDICAL AND NO STAFF helped Ms. Mach.

5:00- Ms. Mach left the Nebraska housing unit lifeless, she had *defecated*, loosing all control of her body, Ms. Mach did not have a pulse. Still NO MEDICAL STAFF was present.

5:10- The Ambulance arrived.

5:25- Medial staff arrived and took Ms. Mach to the Ambulance.

The officer in duty nor the Lieutenant did not touch Ms. Mach to help her in any way.

333 was called twice before the officers came to help Ms. Mach

Nya



1:24-cv-01380-CRL   # 1   Filed: 10/07/24   Page 7 of 7

Tracy Inman 59137-509
Pekin Federal Prison Camp
P.O. Box 5000
Pekin, IL. 61555

PEORIA IL
5TH
03 OCT 2024
PM 4

US DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
600 EAST MONROE ST. RM. 151
Springfield, IL. 62701

62701$1660